May it please the court. My name is Peter Bartelt. I represent Michael Hancock in this appeal. Mr. Hancock brings two questions to this court. One is that we believe that it was error for the district court to rely upon the predicate felonies that were convictions of record for Mr. Hancock from the state of Colorado. It's our position that those predicate felonies were rehabilitated. Mr. Hancock had received an unconditional discharge from the state of Colorado. Colorado is also a state that restores civil rights by operation of law to ex-prisoners. So once they receive that discharge, their civil rights are restored. Not their right to possess a gun. That's the question in this case, Your Honor. Well no, there's no question about that. He did not, his right to possess a gun was not restored. Colorado has a felon in possession prohibition. They do, Your Honor. Right, so as a matter of law, as a matter of Colorado law, he could not possess a gun. That is correct. Except perhaps in the narrow exercise of his constitutional right in his home. That's correct. Which this, you know, that's not implicated here. You're correct, Your Honor. That is the reading of Colorado law. Right, so this is this is entirely a Bookmire mousetrapping case. It is, Your Honor. And the document that he got just says that he's unconditionally discharged from the custody of the Department of Corrections pursuant to the statute. It doesn't say anything about restoration of rights one way or the other. That's correct, Your Honor. Our position would be that the document that says that he was unconditionally discharged means that there were no conditions that precluded him from doing those sorts of things that any other Colorado citizen would be able to do. That just means he's no longer on paper. Doesn't mean that his civil rights are restored. That's certainly a reading. It's not, it's not, you know, an advisement that all of your civil rights are restored, including the right to possess firearms. Well, the document does not specifically state that any specific civil rights are restored. Correct, Your Honor. So he wasn't mousetrapped. We believe that he was, that the unconditional discharge, as well as the operation of law, Your Honor, creates confusion as to whether or not he could That's correct. That specific statute does not provide him or restore the right to possess a firearm. That's correct, Your Honor. Our position is that if the big three civil rights were restored, namely the right to vote, the right to participate on a jury, as well as the right to hold office, and he receives a document that says that he's unconditionally discharged, that that's what creates the confusion. With respect to the other issue, Your Honor, the Franks issue, the district court in this case held that the officer was reckless with disregard to the truth by eliminating, or excuse me, omitting information regarding the confidential informant and the fact that he was in custody for assaulting a law enforcement officer. We believe that that casts a taint, if you will, and a pall on the entire affidavit, and that perhaps if the judge that issued the search warrant knew those facts, that that search warrant may not have issued. We believe that it would be bad policy for a reviewing court to be able to excuse deceptive behavior on the part of law enforcement with a sort of kitchen sink affidavit, where the reviewing court would be able to pick a portion in section 2 or section 3 of the affidavit and say, well, that's good enough to establish probable cause. Excuse me, therefore, the search warrant is... But aren't all these informants ex-cons? Generally, yes, Your Honor. Yeah, so why do I have to put that in the affidavit? Well, our position isn't so much that it was the fact that this confidential informant was a bad person or a bad dude, Your Honor. It was the fact that this officer had information regarding this court. But what was the relevance of that information? I believe that if the court had known that this particular individual was in custody for assaulting a law enforcement officer... For doing what? For assaulting a law enforcement officer, that that may have cast, number one, a different light on how that judge reviewed that confidential informant. I don't understand. Even though he attacked a police officer, he's hired as a, you know, as a confidential informant. So the police must have thought, well, yeah, he can be one of our informants. That sounds okay, right? So I don't know how that would undermine his... the probative value of whatever information he gave the police. Again, Your Honor, it's not so much from our perspective that the value of what the confidential informant gave is undermined. It's that the law enforcement officer had information that he withheld from the judge. But the information... how could the information be relevant to the judge? What would the judge say? Well, you can't use... you can't use... you can't hire to be confidential informants people who've committed crimes, people who've assaulted police officers. That would end the the confidential informant business, right? How could they possibly find a confidential informant who had not been involved in criminal activities? I don't think that they would be able to. The person wouldn't have any Your Honor, you're correct. I think it would be very difficult for someone to find a confidential informant without a criminal record. I think that what would be important for the court to know would be the information regarding that person so that the judge would have all the information in front of them and wouldn't have to do any additional research attempting to determine whether or not a probable cause should be established or that this search warrant should issue. Thank you. May it please the Court, Kevin Burke on behalf of the United States. As to the Franks issue... Let me ask you about this. When someone is released from a Colorado prison, is he given some kind of statement as to what he can do and can't do now that he's been released? Docket 80 in the record is an example of the type of document that is reviewed by the probation officer with the person who is being released from custody. And it notes the state prohibition as well as the federal prohibition on continuing to possess firearms. It's not in the discharge document, but it is a separate part of out-processing that typically occurs, Your Honor. What's that document called? The name of the document, I believe, is a firearms advisement form. It's sort of a shorthand. And that's in Docket 80 of the record. It's entitled State of Colorado Advisement. Persons convicted of a felony are advised of the following. Then it lists Colorado law. Oh, that comes at the time of conviction? That comes at the time of release, Your Honor. Time of release. So it's a document generated by the Department of Corrections? Yes, by the Division of Adult Parole and Community Corrections when the person is discharged from custody and is off paper. What was not addressed, well, since we're on the subject, actually, then I won't address Frank's. I'll talk about the discharge document itself. The way that the argument has been cast by the appellant in this case is as if this is somehow an extension or falling within the parameters of Buckmeyer and other associated case law of the circuit. It's truly a request to extend beyond Buckmeyer and other associated cases. It asks that rather than find mousetrapping by the state setting the bait with a confusing document and then the federal government springing the trap, which is really what mousetrapping is, it's saying that confusion engendered by the defendant's own faulty research is what baits the trap and that this is somehow a due process violation because that's what Buckmeyer and other associated cases are grounded in. It's a due process right being vindicated against what is otherwise congressional intent. It strikes a balance and right now the court has struck a bright line test that says you look to the four corners of the document. I think talking about faulty research by a person released from prison, that doesn't sound realistic. How can you do research? I mean, it's one thing for the probation officer to tell him or give him documents saying you can run for governor or senator, but you can't have a gun. So, it seems ridiculous, but there it is. But it's another thing to expect the prisoner to conduct his own research to find out the scope of his restored rights. He's not being asked to conduct his own research. What the claim here is that the very fact that somebody might do research and might reach an incorrect conclusion is somehow a due process violation that under Buckmeyer and associated cases does not allow the government to use the predicate. And that's not the case law. That would be unworkable. What the court has now is a fairly bright line test that's workable and strikes a good balance against congressional intent and substantive due process. And to expand beyond that would simply frustrate congressional intent without actually vindicating any due process right at all. I don't understand the due process argument that you're making. Buckmeyer is a statutory interpretation case. Well, Your Honor, if you are saying that the trap that the federal government springs shut has been baited by another state actor, I think that that's essentially what the right is. Let's not use that whole analogy. Sure. That's been problematic. I recognize that I was in dissent in Buckmeyer, but the point is Buckmeyer was a statutory interpretation case. What constitutes a restoration of civil rights? And the majority said it's the document that counts. Not what state law says, but what the document says. Here all the document says is you're discharged. Correct. End of story. So we have no Buckmeyer violation. Perhaps there is overthinking of it. Whether we're talking about spring traps or baits or anything else. Yes, it could be overthought. And clearly, the document makes no reference to the restoration of any civil rights. Would Buckmeyer apply if the probation officer had told the person being released that he couldn't have a gun? Well, the probation officer did tell Mr. Hancock. And Colorado does, as a matter of course, tell. No, I know. I'm talking about the Buckmeyer decision. Well, frankly, Your Honor, I don't know. Because Buckmeyer itself only deals with the situation of looking at the four corners of the document. And if the hypothetical... I'm just wondering, if there's another document, then why would one worry about what was left out of the first document? I don't believe one would. But because this document just simply didn't refer to any restoration of rights, it's clearly decided on Buckmeyer. Mr. Burke, could we look at the Frank's issue for a minute? Yes, Your Honor. I would appreciate your view of how the situation before us can be distinguished from the Glover case. I'm having some difficulty there, and I'd like the government's view on that. Certainly. Your Honor, Glover is distinguishable both factually and legally. Glover involved a case where the Chicago police officer presented an affidavit that relied almost entirely on the informant's allegations, and included, what the court said, no information regarding the informant's credibility. In our case, it was a four-legged stool, really, which is the way the magistrate judge characterized it. There are four different areas. The informant's information was only one leg of that stool. Further, there was ample information about the informant's credibility, even though the criminal convictions were not included in the affidavit. There were details regarding his own participation in drug sales, drug transportation. He had a track record. I'm sorry? The informant had a track record. Yes, he had a track record. He had a track record. He had firsthand knowledge. He was subsequently corroborated prior to the search warrant application through text messages. He said that he provided the phone number for the defendant, for the defendant's girlfriend, said that the defendant typically does not like to use his own telephone, so he would use Sarah Davis' telephone, his girlfriend's telephone, and sure enough, when those records were pulled prior to application for the search warrant, that is exactly what the police found. So it's highly distinguishable from Glover, and frankly, what the government argued in its brief was vindicated in the most recent case issued by this court in Mullins, which the government provided in a 28-J letter. But more fundamentally, under Franks, Mr. Hancock has waived the issue. The rape allegations alone provided a self-contained independent basis for issuance of the search warrant. The magistrate judge's report and recommendation as to that independent basis was not challenged by Mr. Hancock. Judge Crabb found that that issue had been waived and furthermore has not been raised here on appeal, so there really is no basis for challenging the search warrant here on appeal. What are the specifics of the informant's criminal record that the magistrate judge said were recklessly omitted? What I can tell you, Your Honor, about Mr. Peabody's criminal convictions, he does have convictions for burglary, theft, possession with intent to distribute methamphetamine. He was sitting in jail at the time for resisting arrest under circumstances that caused injury to a police officer. So he did have an extensive... There's no denying that he had an extensive criminal record and that those convictions were not included in the affidavit, but the reality is that Judge Crocker found that even if you were to plug those convictions back in, it would not alter the probable cause determination. Actually, the meth conviction may enhance his credibility because he's providing information about... That's a double-edged sword of these criminal convictions, Your Honor. Right. I mean, if I were the issuing judge reviewing that affidavit, that would be potentially credibility enhancing. Thank you, Your Honor. If there are no other questions... Is it correct that the confidential informants are invariably people with a criminal past? Almost invariably, Your Honor, yes. OK, well, thank you very much, Mr. Burke. And, Mr. Barrett, do you have anything further?  That's quite all right, sir. Thank you. I believe that this case is distinguishable from Mullins in that in Mullins it was dealing with a factual inconsistency, whereas in Mr. Hancock's case what we're dealing with is information that was left out of the affidavit and an actual finding by the district court that the officers leaving that information out was reckless. The concern that I would have, Your Honor, is that if... If the court says that Mr. Hancock isn't entitled to a Franks hearing, it creates an insurmountable burden. If we have an officer that engages in reckless conduct with disregard to the truth and that conduct can be explained away in a different portion of an affidavit, a defendant will never get a Franks hearing. And it sanctions the officer's behaviour so that it would never be reviewable. So that would be our concern in this case, unless the court has other questions, that's all I have. And you were appointed, were you not? I was, sir. All right, well, we thank you for that. Thank you. We thank Mr. Burke as well. So our last case for argument today...